**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KALIROY PRODUCE CO., INC., et al., )<br>                                    )<br>              Moving Parties,    )<br>                                    )<br> vs.                             )<br>                                    )<br> PACIFIC TOMATO GROWERS, INC., )<br>                                    )<br>              Responding Party.    )<br>_____) | No. CIV 10-160-TUC-CKJ<br><br>**ORDER** |

Pending before the Court are Moving Parties' Motion to Vacate Arbitration Award Under Federal Arbitration Act, 9 U.S.C. § 10 in Whole or in Part [Docs. 1 and 2] and Responding Party's Petition to Confirm Arbitration Award [Doc. 15]. The parties presented oral argument to the Court on June 7, 2010.

I. *Factual and Procedural Background*

On July 1, 2005, Pacific Tomato Growers, Ltd. ("PTG"),[1] Kaliroy Produce Co. Inc.

_____

[1] PTG asserts that this action was improperly brought against Pacific Tomato Growers, Inc., which does not exist, was not a party to the agreement, and was not a party to the arbitration proceedings. PTG asserts, therefore, that the Motion to Vacate must fail. However, service appears proper and PTG has made an appearance. *See* 59 Am.Jur.2d. Parties § 409 ("Under modern practice, if the right party is before the court, although under a wrong name, an amendment to cure a misnomer of parties will be allowed. Indeed, many statutes and rules specifically provide for the cure of misnomer by amendment. Corrections of misnomers are permitted under Fed.R.Civ.P. 15(c)."), *footnotes omitted*. The Court will order the caption be amended to reflect the true name as Pacific Tomato Growers, Ltd.

("Kaliroy"), and Agricola LA Primavera S.A. de C.V. ("ALP")[2] entered into a Joint Venture Agreement for the purpose of growing, developing, cultivating, harvesting, packaging, shipping, distributing and selling various types of agricultural products, primarily tomatoes, in Mexico, the United States and elsewhere.

In December 2006, PTG filed an arbitration action for damages arising from Kaliroy's alleged failure to remedy its default under the JVA. *See* Order to Transfer Venue, CV 4:07-CV-449-DCB, Doc. 48, p. 2 of 14. On or about June 18, 2007, PTG filed suit for injunctive relief in the Business Court, a Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, against Kaliroy alleging breach of agreement. *Id*. Kaliroy alleged a breach of agreement against PTG in a counterclaim. The matter was removed to the United States District Court, Middle District of Florida. On or about August 29, 2007, that court ordered the matter transferred to the District of Arizona. Subsequently, the matter was voluntarily dismissed without prejudice by PTG. *See* 4:07-CV-449-DCB.

The parties proceeded to arbitration under the Rules of Arbitration of the International Chamber of Commerce. The final arbitration hearing was held August 18-28, 2008, in Scottsdale, Arizona.[3] The Arbitral Tribunal ("Tribunal") issued its Arbitration Award ("Award") on December 6, 2009.[4] The Award provides that ALP shall pay PTG $3,748,243,

---

[2]Kaliroy and ALP will collectively be referred to as "Movants."

[3]Attorneys' fees and costs issues were argued on February 15, 2010.

[4]Generally, a court should accept the facts as found by the arbitrator. *See Coutee v. Barington Capital Group*, 336 F.3d 1128 (9th Cir. 2003). "In some circumstances, however, legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." *Id.*, at 1133, *citing American Postal Workers Union v. United States Postal Serv.*, 682 F.2d 1280, 1284-86 (9th Cir.1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *but see Bosack v. Soward*, 586 F.3d 1096, 1105 (9th Cir. 2009), *citations omitted* ("Whether or not the panel's findings are supported by the evidence in the record is beyond the scope of our review. . . We 'have no authority to re-weigh the evidence' presented to the arbitration panel."). During argument, counsel for Movants argued that some facts found by the Tribunal were so irrational based on the

Kaliroy shall pay PTG $1,154,797, and PTG shall pay Kaliroy $1,513,851. Prejudgment interest was awarded as indicated in the Award. The Award was transmitted to the parties on December 14, 2009.

On March 15, 2010, Movants initiated the present action by filing a Motion to Vacate Arbitration Award Under Federal Arbitration Act, 9 U.S.C. § 10 in Whole or in Part [Docs. 1 and 2].

II. *Jurisdiction and Applicable Standards*

The parties agree the Award falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the "New York Convention"), 9 U.S.C. §§ 201-208, Publ. 91-368, 84 Stat. 692 (July 31, 1970), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention"). Jurisdiction in this Court is proper: "an action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States .. . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. §203.

The Convention "appl[ies] to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." Convention, art. I(1). An award is non-domestic when it involves a party either domiciled or with its principal place of business outside the United States. 9 U.S.C. § 202 (2006) ("[a]n agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."); *Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte*, 141 F.3d 1434, 1441 (11th Cir. 1998) (arbitral award made in the United States, under United States law, fell under Convention because one party was a German corporation); *Ministry of*

evidence before it.

- 3 -

1  *Defense of Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989)

2  (holding "the award is obviously not domestic in nature because Iran is one of the parties to

3  the agreement.").

4      This case involves one foreign party (ALP) and two domestic parties (PTG and

5  Kaliroy), and principally involved conduct and contract performance in the United States and

6  Mexico.  Moreover, the Tribunal applied Arizona law in issuing the Award.  The Award is

7  non-domestic and within the scope of the Convention.

8      PTG asserts that the vacation or enforcement of the Award is governed exclusively

9  by the Convention.  *Indus. Risk Ins.*, 141 F.3d at 1441-46 (finding an arbitral award falling

10  under Convention and made in Florida under Florida law was subject to vacation only under

11  the Convention standard, without regard to standards set forth in Chapter I of the FAA or any

12  other grounds not specified in the Convention); *M & C Corp. v. Erwin Behr GmbH & Co.,*

13  *KG*, 87 F.3d 844, 851 (6th Cir. 1996)); *Mgmt. & Technical Consultants S.A. v.*

14  *Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1533-34 (9th Cir. 1987).

15      PTG points out that whether the Convention's grounds for vacation are exclusive has

16  not been determined by the Ninth Circuit Court of Appeals.  *See LaPine v. Kyocera Corp.*,

17  2008 WL 2168914 at *5, *6 (N.D.Cal. 2008) ("In the absence of further guidance from the

18  Ninth Circuit, the court concludes that the appropriate standard of review is under both

19  Article V [of the Convention] and 9 U.S.C. section10.").  Although PTG acknowledges that

20  the Second Circuit has determined that the Convention may not be exclusive, *Yusuf Ahmed*

21  *Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2nd Cir. 1997) (interpreting the

22  Convention to contain an exception when vacation of the arbitral award is sought in the

23  nation where the award was entered), PTG argues that this Court should follow the explicit

24  language of the Convention that states its grounds are exclusive.

25      Movants argue, however, that the Convention allows courts of the forum country to

26  set aside a non-domestic award on a forum state' arbitral law.  Convention, Article V(1)(e)

27  (a non-domestic award may be refused enforcement where it "has been set aside or

28                                              - 4 -

suspended by a competent authority of the country in which, or under the law of which, that award is made"). Movants point out that the Tribunal purported to rule under Arizona law within the state of Arizona.

Furthermore, Movants assert that a number of cases have determined that the Convention and the FAA overlap and that domestic FAA grounds also apply in considering whether an arbitral award should be vacated. *Yusuf Ahmed Alghanim & Sons, W.L.L.* 126 F.3d at 21; *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir.1983) ("There is no reason to assume that congress did not intend to provide overlapping coverage between the Convention and the Federal Arbitration Act."); *Jacada, Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 709 (6th Cir.2005), *abrogated on other grounds* (because "award was made in the United States," court "appl[ied] domestic law, found in the FAA, to vacate the award"); *Lander Co. v. MMP Investments*, 107 F.3d 476 (7th Cir.1997) ("Nothing in the Convention or its history, or in the implementing legislation or its history, suggests exclusivity. . . ."). Movants also cite to a California district court case that has recognized that the issue is no longer an open question in the majority of courts which have addressed the issue. *LaPine*, 2008 WL 2168914 at 6 ("the appropriate standard of review is under both Article V and 9 U.S.C. §10").

As pointed out by the Seventh Circuit, Art. VII of the Convention provides:

> [T]he Convention shall not "deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon." 21 ACED at 2520-21. We agree with the Second Circuit that there is "no reason to assume that Congress did not intend to provide overlapping coverage between the Convention and the Federal Arbitration Act." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir.1983).

*Lander Co., Inc.*, 107 F.3d at 481. Indeed, one treatise has stated:

> "By its silence on the matter, the Convention does not restrict the grounds on which primary-jurisdiction courts may annul an award, thereby leaving to a primary jurisdiction's local law the decision whether to set aside an award." [*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 368 (5th Cir. 2003)]. One would expect many other circuits to follow suit.

Ved P. Nanda and David K. Pansius, 3 Litigation of International Disputes in U.S. Courts §

19:14 (March 2010).   Because the Convention does permit courts of the forum country to set aside a non-domestic award based on a forum state's arbitral law and the Ninth Circuit has not yet addressed this issue, the Court finds the Convention's remedies are not exclusive.

The FAA states:

> If the parties in their agreement have agreed that a judgment of the Court shall be entered upon the award made pursuant to the arbitration, and shall specify the Court, then at any time within one year after the award is made, any party to the arbitration may apply to the Court so specified for an order confirming the award, and there-upon the Court must grant such order unless the award is vacated, modified, or corrected . . .

9.U.S.C. § 9.   A court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed by the FAA.  *Schoenduve*, 442 F.3d at 731.  In other words, in light of the determination that the Convention is not exclusive, this Court also has jurisdiction under the FAA.

The FAA reflects a strong federal policy favoring arbitration.  *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 n. 2 (9th Cir.1992).  Moreover, the strong federal policy in favor of arbitration applies "with special force in the field of international commerce."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).  Courts will generally defer to an arbitrator's decisions when the parties have agreed to resolve their dispute through arbitration.  *See Todd Shipyards Corp. v. Cunard Lines*, 943 F.2d 1056, 1060 (9th Cir.1991) ( "It is generally held that an arbitration award will not be set aside unless it evidences a 'manifest disregard for the law.'"); *Catz Am. Co. v. Pearl Grange Fruit Exch., Inc.*, 292 F.Supp. 549,551 (S .D.N.Y.1968) ("Since one of the fundamental purposes of resorting to arbitration is to reduce the cost and delay of litigation, the role of the court must be limited in reviewing an arbitration award.").  The FAA allows courts to vacate an arbitration award upon a finding of:  (1) corruption, fraud or undue means; 2) evident partiality or corruption of the arbitrators; (3) misconduct which prejudices one party; or (4) where the arbitrators exceeded their authority, or so imperfectly executed their powers that a "mutual, final and definite award" on the subject matter was not made. 9 U.S.C. §10(a);

1     *Collins v. D.R. Horton, Inc.*, 505 F.3d 874 (9th Cir. 2007).

2         Arbitrators have "exceeded their powers" only when their award is "completely
3 irrational, or exhibits a manifest disregard for the law." *Schoenduve Corp. v. Lucent*
4 *Technologies. Inc.*, 442 F.3d 727, 731 (9th Cir.2006); *Bosack v. Soward*, 586 F.3d 1096 (9th
5 Cir. 2009). This basis for vacating an arbitration award is, however, "severely limited and
6 for the most part, the court defers to the arbitrators' determination of the award." *See*
7 *Michigan Mutual Ins. Co. v. Unigard Security Ins. Co.*, 44 F.3d 826, 832 (9th Cir.1995.)

8         To rise to the level of manifest disregard, "the governing law alleged to have been
9 ignored by the arbitrators must *be well defined, explicit, and clearly applicable*." *Collins v.*
10 *D.R. Horton. Inc.*, 505 F.3d 874, 879-880 (9th Cir.2007), *citation omitted, emphasis in*
11 *original*. Additionally, the record must be clear that the "arbitrators recognized the
12 applicable law and then ignored it." *Michigan Mutual*, 44 F.3d at 832. However, a court
13 should confirm an award, "even in the face of erroneous findings of fact or misinterpretations
14 of the law[,]" unless the party challenging the decision meets one of the narrow statutory
15 exceptions. *Kyocera Corp. v. Prudential-Bache Trade Svcs., Inc.*, 341 F.3d 987, 997 (9th
16 Cir.2003). Indeed, "[a]rbitrators are not required to set forth their reasoning supporting an
17 award." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009), *citation omitted*. An
18 arbitrator's "award may be made without explanation of their reasons and without a complete
19 record of their proceedings[.]" *Id.* An award is to be confirmed even in the face of erroneous
20 misinterpretations of law. *G.C. & K .B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th
21 Cir.2003). "It is not even enough that the [arbitrator] may have failed to understand or apply
22 the law. An arbitrator's decision must be upheld unless it is completely irrational or it
23 constitutes manifest disregard of the law." *Id.*

24         Additionally, an arbitrator can be held to "exceed their powers" when an arbitration
25 award fails to "draw its essence from the agreement." *United Steelworkers v. Enterprise*
26 *Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *see also Lagstein*
27 *v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010).

28

III. *Violation of Public Policy Under the Convention and Under the FAA*

Under the Convention, a court's review of a foreign arbitral award is limited: "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (2006). PTG asserts that the only basis under the Convention for refusing to recognize or enforce an arbitral award applicable to Movants' arguments is that "recognition or enforcement of the award would be contrary to the public policy" of the country in which enforcement or recognition is sought. Convention, Article V(2).

"The public policy exception in Article V(2)(b) of the Convention is very narrow, and applies only where enforcement of the award would violate 'the most basic notions of morality and justice' of the forum where enforcement is sought . . . [t]he party opposing enforcement of the arbitration award has the burden of proving that enforcement would violate [public policy]." *Telenor Mobile Communications AS v. Storm LLC*, 524 F.Supp.2d 332, 357 (S.D.N.Y. 2007), *citing Europcar Italia S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998)). Movants assert, and PTG agrees, that policy grounds for vacation "[are] a specific application of the more general doctrine . . . that a court may refuse to enforce contracts that violate law or public policy." Motion to Vacate, Doc. 1, p. 13 of 21,[5] citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42-44, 108 S.Ct. 364, 373-74, 98 L.Ed. 286 (1987); *see also W.R.Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Hurd v. Hodge*, 334 U.S. 24, 34-35, 68 S.Ct.847, 852-853, 92 L.Ed.1187 (1948). Further, the parties appear to agree that consideration of public policy as a basis for vacating the Award is the same whether considered under the Convention or the FAA.

The Supreme Court has determined that a court should refuse to enforce an arbitrator's interpretation of contracts where the contract as interpreted would violate "some explicit

---

[5]The Court refers to the CM/ECF designation of page numbers.

public policy" that is "well defined and dominant, and . . . ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R.Grace*, 461 U.S. at 766, 103 S.Ct. at 2183, *quoting Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945); *see also Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (where award's effect was to prevent non-party relatives from engaging in its business for 14 years anywhere except where it currently operated a club, the restraint on competition ran contrary to California Bus. & Prof. Code §16600, which codified California general rule that non-compete covenants are void).

PTG asserts, however, that Movants' reliance on *Comedy Club* is misplaced because the vacation of the arbitral award in that case was based on the arbitrator's lack of authority over nonparties.[6] Additionally, the award was modified by the court to be less restrictive as to a party because the award was in violation of Cal. Stat. § 16600. 533 F.3d at 1289. PTG asserts that the strong public policy at issue in *Comedy Club* is not implicated here. While Movants do not dispute PTG's assertion that a non-compete provision is not implicated in this case, Movants asserts that the Award in this case violates Arizona statutes (i.e., A.R.S. §§ 29-1052 and 29-1061).

Movants assert that the Award violates Arizona public policy in its (i) effective denial of the non-breaching partners' rights to offset its losses against amounts payable to a breaching partner, A.R.S. §29-1052 and §29-1061, and (ii) award of interest as if the payment to the breaching party were "due" despite the setoff rights of the non-breaching parties. *See, Gemstar Ltd. v. Ernst & Young*, 185 Ariz. at 508-09, 917 P.2d at 237-38. Movants assert that the Award contravenes the public policy of "the promotion of Arizona business through laws that prevent breakdowns between partners, [the promotion of] the faithful performance of partnership agreements, [and] the enhancement of business

---

[6]The vacation of the award in *Comedy Club* was based on both a lack of authority over non-parties and the violation of non-compete principles. *Comedy Club*, 553 F.3d at 1287-88.

risk-taking by supporting those who honor their business commitments. Motion to Vacate, Doc. 1, p. 14 of 21.

PTG argues, however, that if every arbitration award that fails to award setoff rights in favor of a party that claims them is in violation of Arizona public policy, there would be no deference afforded to arbitrators' decisions. PTG asserts that Movants argument has no legal support – Movants' reliance on *Gemstar* is misplaced because it involved the review of a jury trial verdict concerning several liability.

While *Gemstar* may not be factually similar, Movants correctly state Arizona law. *See* A.R.S. § 29-1052 (discussing when a dissociation is wrongful); A.R.S. § 29-1061(C) ("Damages for wrongful dissociation under § 29-1052, subsection B, and all other amounts owing, whether or not presently due, from the dissociated partner to the partnership, shall be offset against the buyout price. Interest shall be paid from the date the amount owed becomes due to the date of payment.").

Additionally, PTG asserts that Movants' have failed to present key findings in the Award: "(i) Movants were found to be in breach and (ii) Movants were awarded setoff damages, with interest. Contrary to Movants' assertion that they were found to be innocent, non-breaching parties, the Tribunal ruled that Movants' "breach of contract regarding payment of profits dates from the day when, according to the contract those profits were to be paid[,]" i.e., December 13, 2006. Response to Motion to Vacate, Doc. 14, pp. 8-9 of 19, *citing* Award, ¶ 166. PTG asserts that the statutes related to the rights of non-breaching parties, therefore, is not an appropriate basis for support of a "public policy" argument. Movants assert that the Tribunal specifically stated that, "in April 2006, when [PTG] breached there were no material breaches [by ALP], save for possible accounting issues, now largely resolved." Reply to Motion to Vacate, Doc. # 25, p. 7 of 11, *citing* Motion to Vacate, Award, Doc. # 1-2, ¶ 119. When the Tribunal later, when discussing pre-judgment interest, mentioned a breach of contract, it was merely imprecise language to refer to a date for calculation of interest.

PTG disputes Movants' contention that their claim of setoff damages was ignored by the Tribunal. PTG asserts that the Tribunal examined the claim in detail, *See* Motion to Vacate, Award, Doc. 1-2, pp. 46-55 of 57. PTG points out that the "label claim" – the setoff damages allegedly incurred by Movants when the "Sunripe" label could no longer be used resulted in damage awards of $737,882 and $786,029 and pre-award interest in favor of Kaliroy. Motion to Vacate, Award, Doc. 1-2, ¶¶ 53 and 169.

Movants have not accurately characterized the Award. The Award recognizes the breach by PTG and the non-material breach by Movants, but then finds inadequate proof of damages. *See* discussion *infra*. This does not constitute a violation of public policy.

IV. *Manifest Disregard of Arizona Law*

The Award states:

> (viii) ALP denies it wrongfully withheld any sums within any required deadline. PTG's termination of the JVA constituted wrongful dissociation under Ariz. Rev. Stat. § 29-1052, and § 29-1061 allows ALP to withhold distribution as a setoff to its damages, and to withhold any distribution until after the three (3)-year term.

> (ix) ALP denies it wrongly withheld any sums within any required deadline. PTG's termination of the JVA constituted wrongful dissociation under Ariz. Rev. Stat. § 29-1052, and § 29-1061 allows Kaliroy to withhold distribution as a setoff to its damages, and to withhold any distribution until after the 3-year term.

Motion to Vacate, Award, Doc. # 1-2, ¶ 36. The Award further states:

> Respondents further contend that PTG's breaches and termination created a "wrongful disassociation" under Arizona partnership law that allows them to offset the resulting damages against anything that may be owed to PTG. In addition, they seek an affirmative award of damages for losses caused by PTG's breaches.

Motion to Vacate, Award, Doc. # 1-2, ¶ 40. Movants assert that this shows that the Tribunal clearly recognized the applicable Arizona partnership law and then ignored it. Movants assert that, although the Award recites that ALP claimed the right of offset against PTG's profit share claims, but makes no ruling on the offset claim – the Award simply awards the entire $3,072,022 to PTG without mention of whether the Arizona statutory offset is available.

- 11 -

PTG asserts, however, that the statements from the Award are simply a recitation by the Tribunal of Movants' contentions, not findings by the Tribunal. PTG asserts that this does not establish that the Tribunal recognized applicable law and then ignored it. Furthermore, PTG asserts that the Tribunal ruled that Movants "never advanced details to support claims (d) [damages from wrongful disassociation] . . ." Motion to Vacate, Award, Doc. # 1-2, ¶¶ 144-45. If evidence had been submitted and was ignored by the Tribunal, PTG asserts that Movants would have been able to cite to such evidence in the record and they have not. PTG asserts that Movants have not cited any "defined, explicit and clearly applicable" law, *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004), *internal citations and quotations omitted*, that was ignored and that their "argument, in essence, amounts to an invitation to review the panel's factual findings and legal conclusions. [The Court is] prohibited from doing so." *Bosack*, 586 F.3d at 1104.

Movants acknowledge that the Tribunal did not describe PTG's repudiation as having "wrongfully dissociated," the term under the Arizona offset statutes; however, Movants assert the Tribunal found that PTG breached the JVA by repudiating the 3-year contract shortly prior to Year Two. Movants asserts that, under §29-1052, any material breach of a partnership agreement works a "wrongful disassociation," entitling the non-breaching partner to offset his damages under §29-1061; i.e., the Tribunal did not need to use the specific language.

Again, the Award recognizes the breach by PTG and the non-material breach by Movants, but then finds inadequate proof of damages. The Court cannot say that the Tribunal manifestly disregarded Arizona law as to whether there was a wrongful dissociation.

The Award also states:

117) In our view, the Counterclaim is made out. A threat not to perform a contract is a repudiation of the contract as defined by Article 250 Restatement of Contracts – 2nd, which defines repudiation as " . . . a statement by the obligor to the obligee indicating that the obligor will commit a breach . . ." and, because no adequate reassurance was offered when sought under Article 251, then, pursuant to Article 253 this repudiation gives rise to a claim for damages for total breach. It is no less a threat not to perform if the threat is accompanied by [an] offer to perform only if new terms

to the contract are accepted. See *United California Bank v. Prudential Ins. Co.*, 681 P.2d 390, 431 (Ariz.App. 1983).

\* \* \* \* \*

119) It was argued for PTG that damages for this breach were not justified because Respondents were themselves guilty of material breaches of contract. To assess this properly we first must ask what damages either was guilty of before the threats were made. We are very sympathetic about breaches while under threat. People under threat often exercise bad judgment. Moreover, the fact that issues alive from 2003-4 were still outstanding in 2005-6 can hardly be laid entirely at the door of the Respondents. If PTG took them seriously, it could have refused to negotiate the 2005 JVA without a resolution of these issues, which did not happen as a condition of the making of the 2005 JVA. The fact that it did not encourages us to think that they were not material breaches, and in this Award we have made this point in several ways. Beyond that, there are the allegations about accounting and disclosure errors, which largely were cured by the Deloitte report and otherwise during the hearing. We conclude that in April 2006, when the threats were first made there were no material breaches, save for possible accounting issues, now largely resolved.

120) We conclude that there was a valid claim for damages for an anticipatory breach of contract.

Motion to Vacate, Award, Doc. # 1-2, ¶¶ 117, 119-120. Movants asserts that Arizona contract law provides that the non-breaching party is entitled to recover all amounts proximately and foreseeably caused by the breach. *Earle M. Jorgenson Co. v. Tesmer Mfg. Co.*, 10 Ariz. App. 445, 450, 459 P.2d 533, 538 (1969); *Northern Arizona Gas v. Petrolane Transportation, Inc.*, 145 Ariz. 467, 478-79, 702 P.2d 696, 707-08 (App.1984); Restatement (2nd) of Contracts, §§ 344, 347. Movants argue that, although the Tribunal concluded that PTG's repudiation gave rise to a claim for damages for total breach, the Tribunal awarded no damages to ALP based on the defaulted payments agreed to by PTG in the JVA contract. Rather, the Tribunal only awarded Movants damages according to a number not found in the JVA contract. Movants assert that this addressed issue (49)(a), but it left issues (49)(b) and (c), as stated in the Award, uncompensated and ignored. *See*, Motion to Vacate, Award, Doc. 1-2, p. 24 of 57.

Specifically, Movants assert that PTG agreed to pay its share of growing costs ($3,140,000 for 2005-2006) and an agreed "facilities charge . . . in lieu of depreciation" ($3,236,625 per year for 2006-07 and again for 2007-08) for use of the packing house built

by ALP to accommodate the joint venture with PTG as expressly stated in the JVA. Motion to Vacate, Parker Decl., JVA, Doc. # 1-3, pp. 11-12 and 15 of 24. Movants assert that the annual payments agreed to by PTG amount to about $12,000,000 in losses suffered by ALP due to PTG's breach and that it is against this loss that ALP/Kaliroy asserted the offset under A.R.S. §29-1052 and §29-1061(a) of PTG's claimed 2005-2006 profit share and all other amounts withheld from PTG. Movants assert that although the Tribunal recognized Counterclaimants' right to contract damages, none were awarded from the contract payments on which PTG had defaulted; Movants assert the omission makes the Award "completely irrational" and in "manifest disregard of law."

PTG asserts, however, that the evidence presented to the Tribunal included testimony and written evidence from two expert witnesses, both of whom are former Chief Justices of the Arizona Supreme Court, Thomas Zlaket (for PTG) and Stanley Feldman (for Movants), on Arizona contract law. Motion to Vacate, Award, Doc. 1-2, ¶ 11; Response to Motion to Vacate, Doc. 14, p. 13 of 19. The Tribunal conducted an in-depth review of the *Schade v. Diethrich*, 760 P.2d 1050 (1988), opinion and "agreements to agree." Motion to Vacate, Award, Doc. 1-2, ¶¶ 130-43. PTG asserts that the Tribunal correctly applied the law and found that the only evidence as to Movant's damages was for the lost Sunripe label ($1 per box) based on PTG's expert testimony – while totally discrediting the $5 per box claimed by Movant's expert. Motion to Vacate, Award, Doc. 1-2, ¶¶ 149-164. Furthermore, PTG asserts that the remaining claims failed for lack of proof. Motion to Vacate, Award, Doc. 1-2, ¶¶ 147-48.

Movants assert that the Award of $1 per carton for loss of the value of PTG's established "Sunripe" label, to compensate for the lost marketing power of an established produce label, is not the "offset" right asserted by ALP as the non-breaching partner for its damages from PTG's repudiation; rather, the offset claim is for lost profits due to PTG's withdrawal of the "Sunripe" label that were not realized until after the tomato crop had been harvested and sold (i.e., May of 2007) – the $1 per carton Award is unrelated to the offset

claim.

The Tribunal determined that the JVA provided that the parties expected a new growing agreement each year.  Motion to Vacate, Award, Doc. 1-2, ¶¶ 134.  The Tribunal recognized that Movants requested that, because PTG acted in bad faith in failing to agree to a reasonable growing proposal, the Tribunal should "fill that gap" as in *Schade*.  In other words, Movants were requesting that other terms of the JVA be enforced (e.g., payment of growing costs and facility charge) even though there was no growing agreement.  The Tribunal stated:

> The fact remains that there was no growing agreement, and the contract assumes one would be made and without it the JVA may be frustrated.  Indeed, it can fairly be said that, notwithstanding the renewal clause, the JVA treats a new growing agreement each year as a condition precedent to its continuation.

Motion to Vacate, Award, Doc. 1-2, ¶¶ 136.  The Tribunal, distinguishing *Schade*, determined that the growing issues were too complicated to impose terms on PTG.  Motion to Vacate, Award, Doc. 1-2, ¶¶ 142.  It is not that the Tribunal was ignoring the applicable law, but the Tribunal determined that there was no "reasonable certainty" about the "missing terms."  *See* Motion to Vacate, Award, Doc. 1-2, ¶¶ 142.  The Court finds the Tribunal did not manifestly disregard Arizona law as to this issue.

Movants assert that Arizona law allows prejudgment interest from the date when an ascertainable amount of debt is "due."  *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508-09, 917 P.2d 222, 237-38 (1996).  Under Arizona law, any material breach of a partnership (or joint venture) agreement is a "wrongful dissociation," which allows the non-breaching party to offset its damages against payment of any sums payable to the breaching partner.  A.R.S. §§29-1061, 29-1052.  Movants assert, therefore, that under Arizona law the non-breaching party need not pay off the breaching partner, then sue to recover damages -- the non-breaching party can apply sums from the breaching partner's account to satisfy the breaching partner's obligations.  Indeed, Movants assert that is what

1  ALP did.[7]

2  Movants assert that, due to offset rights under A.R.S. §§ 29-1052 and 29-1061(a),

3 there was no payment of profit share "due" to be paid to PTG and that, with no payment due,

4 an award of prejudgment interest was not justifiable under Arizona law.  In other words, in

5 view of the Tribunal's reference to the offset statute, the award of prejudgement interest to

6 PTG amounts to a "manifest disregard of law" warranting vacation of the Award.

7  PTG asserts, however, that Movants did not present any interest accrual arguments

8 to the Tribunal.  Therefore, Movants have not cited to any legal arguments in the record on

9 this issue or any "well defined, explicit and clearly applicable law" that was recognized and

10 ignored.  *See Carter* at 838.  Moreover, as to interest awarded to PTG, PTG asserts that its

11 interest claim was confirmed by Movants' audited financial statements, half of which is due

12 to PTG and has not been paid.  Motion to Vacate, Award, Doc. 1-2, ¶ 75.  PTG asserts that

13 it is entitled to recover prejudgment interest because the JVA, Art IX(C), provided for the

14 award of interest and because PTG's damages are liquidated (fixed).  *Corp./Sylvan Pools v.*

15 *Industrial Comm'n of Ariz.*, 845 P.2d 461, 464 (Ariz. 1993); *La Paz County v. Yuma County*,

16 735 P.2d 772, 778 (Ariz. 1987).  PTG summarizes by asserting that "Movants cannot

17 overcome PTG's entitlement to interest by trumping up a bloated $19,000,000 counterclaim

18 (only $10,000,000 of which was even arguably presented at the hearing) and recovering only

19 $1,513,851 of it as a setoff against the $4,903,040 awarded to PTG.  Response to Motion to

20 Vacate, Doc. 14, p. 14 of 19.

21  PTG also disputes Movants' claim that the Tribunal found that PTG "wrongfully

22 disassociated."  PTG asserts that the Tribunal awarded offsetting damages, including interest,

23  _____

24  [7]Movants assert that, as the Award specifies, the offset applied to the PTG $3,072,022
profit share was the missing $3,140,000 PTG contribution for the next season's growing
25  costs.  Motion to Vacate, Award, Doc. 1-2, ¶¶ 35.  Further, the claim for "growing and
packing costs," and packing costs were stated in the JVA as a $3,236,625 "facility charge in
26  lieu of depreciation" owed for the next two seasons.  Motion to Vacate, Award, Doc. 1-2, ¶¶
27  35.

28  - 16 -

to each side. Alleged erroneous calculations do not justify overturning the Award under the "highly deferential" standard afforded to arbitration.[8] *See Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004).

Movants did not address PTG's arguments in Movants' Reply. The Court finds, therefore, that because Movants did not present the interest accrual argument to the Tribunal, this is not an appropriate basis to vacate the Award. Moreover, the JVA provided for prejudgment interest.

## V. *Award Fails to "Draw its Essence" from JVA*

Movants argue that an award "fails to draw its essence from the agreement when: (1) it conflicts with its express terms; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement." *Solvay Pharmaceuticals, inc. v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471, 477 (6th Cir.2006), *citation omitted*. PTG asserts that arbitrators exceed their powers when an award is completely irrational, not when they merely interpret or apply the governing law incorrectly. *See e.g., Comedy Club, Inc.*, 553 F.3d at 1289; *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986). Further, PTG asserts that, in the Ninth Circuit, an award "draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Bosack*, 586 F.3d at 1106, *internal citation omitted*. PTG asserts that, under this standard of review, courts do not "decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision 'draws its essence' from the contract." *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir.1991). PTG argues that, because

---

[8]PTG asserts that the Tribunal's calculation was not erroneous.

a court should not vacate an award simply because it might have interpreted the contract differently, *id.*, even if the award conflicts with the express terms of the Agreement, it should not be vacated.

Movants assert that, under the terms of the JVA, ALP is entitled to an annual contribution from PTG to the costs of growing the tomato crop during the 3-year term of the JVA. Because PTG is the sole breaching party, Movants assert that ALP and Kaliroy are entitled to recover their losses proximately caused by PTG's breach. *Earle M. Jorgenson Co. v. Tesmer Mfg. Co.*, 10 Ariz. App. at 450, 459 P.2d at 538; *Northern Arizona Gas v. Petrolane Transportation, Inc.*, 145 Ariz. at 478-79, 702 P.2d at 707-08. Movants assert that even though the Tribunal concluded that PTG had a duty to fulfill the contract through to its term, Motion to Vacate, Award, Doc. 1-2, ¶ 148, its failure to compensate for the loss of the agreed payments in the Award is a failure to draw its essence from the agreement.

PTG argues, however, that Movants' reliance on *Solvay Pharmaceuticals, Inc.*,[9] a Sixth Circuit case, is misplaced. PTG points out that the Ninth Circuit recently held that an award "draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Bosack*, 586 F.3d at 1106, *internal citation omitted*. Under this standard of review, courts do not "decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision 'draws its essence' from the contract." *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir.1991).

PTG asserts that Movants have failed to identify any evidence in the record as to how the growing costs would be determined following PTG's exit, did not discuss the Tribunal's analysis of *Schade*, and the Tribunal's conclusion that it could not impose contribution

---

[9]PTG points out that the Sixth Circuit upheld the district court's confirmation of the arbitral award.

amounts and other necessary terms for the 2006-07 and 2007-08 seasons (years 2 and 3 of the Agreement) as "growing issues are far too complicated for this Tribunal to impose terms on the parties. In other words, the [Movants] have failed to meet the 'reasonable certainty' test." Motion to Vacate, Award, Doc. 1-2, ¶ 142. PTG also asserts that the Tribunal also considered Movants' damages under Movant's claim that the failure to reach an agreement on terms following the first year of the Joint Venture was due to PTG's failure to negotiate in good faith and that the Tribunal found that Movants had not presented any evidence of damages as a result of PTG's alleged failure to pay growing costs and facility charges. Motion to Vacate, Award, Doc. 1-2, ¶ 148 ("these claims must fail for lack of that information"). Additionally, PTG asserts it was not required to pay the facility charge at issue because the JVA provided that ALP would deduct the charge in lieu of depreciation – the charge was to be deducted from revenue as an expense, in order to arrive at a profit or loss, just as depreciation would be deducted. Motion to Vacate, Parker Decl., JVA, Art. V(A)(2), Doc. 1-3, pp. 14-15 of 24. PTG not only asserts that Movants did not present any evidence as to how Movants were damaged by a purported lack of a facility charge after PTG's departure, but also asserts that Movants abandoned this claim. In fact, PTG asserts that ALP could have deducted a facility charge regardless of whether PTG was participating in the Joint Venture. Moreover, "[w]hether or not the panel's findings are supported by the evidence in the record is beyond the scope of our review." *Bosack v. Soward*, 586 F.3d at 1105.

During argument, Movants asserted that the JVA provided that PTG was to contribute $3,140,000 for growing costs. *See also* Motion to Vacate, JVA, Doc. 1-3, ¶ IV(B)(1)(a). Movants further asserted that the JVA provided that the parties would develop by mutual agreement a planting program and budget for the upcoming season. *Id*. at ¶¶ VII(B) and (C). Movants argued that the only way to read these provisions was that in successive years, the number of acres could only be larger . . . in other words, the terms of the JVA necessarily

established damages of at least $ 3,140,000 for each successive year.[10]

However, the JVA provides that the JVA *may* be renewed in that manner.  *Id*. at ¶ VII(B).  Moreover, the Court disagrees with Movants' assertion that the JVA necessarily provides that the minimal planting program must necessarily equal the initial term.  Contrary to Movants' assertion that the damages were self-proven by the terms of the JVA, the issue was, as determined by the Tribunal, whether Movants had proven any damages.  The Court cannot say that the Tribunal's determination that the terms were not reasonably certain such that the Award fails to draw its essence from the JVA.  The Tribunal's determination that "notwithstanding the renewal clause, the JVA treats a new growing agreement each year as a condition precedent to its continuation[,]" Motion to Vacate, Award, Doc. 1-2, ¶ 136, cannot be said to have failed to draw it essence from the JVA.  It is not that the Tribunal was ignoring the applicable law or the terms of the JVA, but the Tribunal determined that there was no "reasonable certainty" about the "missing terms."  *See* Motion to Vacate, Award, Doc. 1-2, ¶ 142.  The Court finds that, in light of the Tribunal's discussion of *Schade* and whether there was reasonable certainty to impose the terms, it cannot be said that the Award does not draw its essence from the JVA.

Movants also assert that the Award's requirements that are not provided for in the JVA constitutes a failure to draw its essence from the agreement.  The Award states:

> 145)  In the trial evidence, and written and oral argument, only claim (a), based on loss of label, was advanced.
>
> 146)  ALP and Kaliroy divided the farm business into two parts.  ALP was responsible for seeding, growing and harvesting.  Kaliroy was responsible for packaging and selling.  It is obvious that some part of this claim belongs to ALP and other parts to Kaliroy, and yet others are not clear, or are hopelessly mixed.  No attempts was made by them to distinguish the two claims, and indeed they were joint counterclaimants from the start. . . .
>
> * * * * *

---

[10]During argument, Movants asserted that the Tribunal did not address that provision of the JVA.  However, the Tribunal did acknowledge that Movants sought to "resort to the previous year's agreement."  Motion to Vacate, Award, Doc. 1-2, ¶ 142.

148) As to claims (b) and (c), we do know that a crop was planted and harvested each year. Having found a breach by PTG, we must conclude they had a duty to fulfill the contract through to its term – three years. But ALR/Kaliroy (sic) had a duty to mitigate any loss caused by the failure of PTG to contribute to growing and harvesting costs. We have no idea how this was financed for the last two (2) years, and no information whether the terms were more or less favourable that (sic) the tough terms in the JVA. These claims must fail for lack of that information.

Motion to Vacate, Award, Doc. 1-2, ¶¶ 145-148. Movants assert that this "(i) invents the fiction that Arizona contract law requires a nonbreaching party to obtain financing to replace a defaulted payment, and (ii) requires that this fictional loan agreement have more onerous terms than the breached contract. It is also unclear just what is intended by the Tribunal's phrase "growing and harvesting costs." Motion to Vacate, Doc. 1, p. 16 of 21.

As to Movants' claim that the Award requires financing of defaulted funds, Movants dispute the Tribunal's conclusion that it has no idea how the growing costs were financed for the last two years.[11] The Award states:

31) PTG further contends that Respondents materially breached their duties, representations, warranties and covenants by failing to perform the duties outlined above, by wrongfully demanding a capital contribution equal to the amount paid for 2005-2006, by misappropriating and depleting the commingled Joint Ventures' funds for their own use, by charging expenses to the Joint Ventures that were unauthorized and unrelated tot he Joint Ventures' operations, by awarding unauthorized bonuses and compensation to Respondents' employees, and by withholding and refusing to refund US$175,000 that was withheld for tax purposes for fiscal year 2003-2004 even though ALP paid no taxes. The facts concerning ALP's wrongful withholding of the taxes from PTG and non-payment of Mexican taxes, along with the facts concerning unauthorized and unrelated expenses, and unauthorized bonuses and compensation, were withheld and concealed by Respondents.

32) As to the commingled funds, PTG further contends that Respondents admitted that they failed to set up separate bank accounts for the Joint Ventures. Instead, they commingled PTG's cash contributions, and the cash deposits, credit lines, factored receivables, and accrued profits of the Joint Ventures with their personal and non-Joint Venture business funds. Respondents maintained that they would use the commingled funds as they saw fit to pay for Respondents' personal and non-Joint Venture related expenses and would not give PTG access to the commingled account information.

* * * * *

[11]Movants appear to assert that the statement in the Award that there was no information if the terms were more or less favorable than the terms of the JVA imposed a requirement that the details of a loan needed to be provided.

\* \* \* \* \*

35) . . . [Respondents] contend that PTGs breach of its obligations for the Agreement's second and third years caused them substantial damage, and that PTG is not entitled to any "profits" from the Agreement's first year without having met the obligations of its second and third years. Respondents had the responsibility for growing, packing and selling the Produce, plus the obligation to contribute a fifty percent (50%) equity share and borrow all further capital needed (about US $10 million) beyond PTG's fifty percent (50%) equity contribution. PTG was responsible for contributing a fifty percent (50%) equity share toward growing and packing costs, and for licensing the use of its "Sunripe" label for sale of the Products. Unlike the previous two 1-year joint ventures, PTG's duties to contribute to growing costs and to license its "Sunripe" label were a continuing three (3)-year obligations under the Agreement. . .

Motion to Vacate, Award, Doc. 1-2, ¶¶ 31-35. Movants assert this, and other provisions of the Award, shows that the Tribunal obviously had evidence that the offset was used to fund the next season's growing costs. Movants assert that, by ignoring this evidence and requiring evidence of a loan, the Tribunal mangled the law of contracts.[12]

Movants point out that a defendant must prove that a plaintiff has failed to mitigated damages. *Fairway Builders. v. Malouf Towers Rental Co.*, 124 Ariz. 242, 255, 603 P.2d 513, 526 (App.1979); *see also Fulton v. Woodford*, 17 Ariz.App. 490,494, 498 P.2d 564, 568 (1972) (plaintiff cannot recover damages that could have been avoided by mitigation of damages, i.e., reasonable conduct, which is a question of fact); *Britt v. Red Mesa Sch. Dist.*, 165 Ariz. 389, 390, 799 P2d 9, 10 (App.1990). Movants assert that where, as here, there was no evidence about mitigation, that is not a basis to deny their recovery. PTG's failure to present mitigation evidence should have resulted in the sustaining of Movants' case without reduction for mitigation.

Additionally, Movants assert that PTG made no claim that Movants had failed to mitigate their damages and the Award does not point to any such claim. Movants assert:

That was entirely created by the Award's author, who, in five lines, penalizes

[12]The elements under Arizona law to recover for breach of contract are (i) a valid contract; (ii) a material breach; (iii) proximate cause; and (iv) foreseeable damage. *Earle M. Jorgenson Co. v. Tesmer Mfg. Co.*, 10 Ariz. App. at 450, 459 P.2d at 538; *Northern Arizona Gas v. Petrolane Transportation, Inc.,* 145 Ariz. at 478-79, 702 P.2d at 707-08.

- 22 -

Respondents with dismissal of claims worth $12,000,000 for failure to prove less "favourable" terms in a replacement loan agreement! Thus, ALP/Kaliroy had no opportunity(or need) to point out how this application of "mitigation" doctrine was wildly incorrect, since it appeared for the first time in the Award itself! Under any analysis, this was a misapplication of law. The Award's denial of claims due to "no mitigation evidence of financing" is both "clearly irrational," and invalid for requiring proof beyond that of Arizona law and the JVA itself. It commits a manifest disregard of law and fails "to draw its essence" from the JVA contract.

The Tribunal stumbled badly on the mitigation point, and ironically, the mitigation point was the sole ground on which the Award dismissed ALP's and Kaliroy's claim. The Tribunal thereby enlarged the required proof of contract breach beyond that stated in Arizona law. The Award should clearly be vacated for this reason.

Motion to Vacate, Doc. 1, p. 18 of 21.

As to Movants' claim that it is not clear what was intended by the Tribunal's use of the phrase "growing and harvesting costs," Movants assert that perhaps the Tribunal was making this reference to the facility charge. However, Movants assert that harvesting is a field operation associated with growing costs, not a packing operation associated with a facility charge and depreciation.[13] Movants assert that, if the Tribunal considered the harvesting and growing costs as the facility charge, the Tribunal would have intended to dismiss the facility charge due to lack of evidence of having mitigated by obtaining alternate financing. Movants point out that without the agreed facility charge, the depreciation merely went uncompensated and that it would not have been reasonable to borrow to account for "depreciation," which is a financial accounting construct to recognize physical deterioration that occurs, often unseen, until advanced stages. Movants assert that the facility charge was the amount PTG agreed to compensate ALP for the depreciation and that, unlike growing costs which may vary, the depreciation/facility charge was a set amount of $3,236,625 per year. Movants assert that the dismissal of the facility charge claim for lack of evidence of

---

[13]The JVA states that ALP was to be provided with special allocations including a "'facility charge' of THREE MILLION TWO HUNDRED THOUSAND UNITED STATES DOLLARS ($3,236,625) in lieu of and attributable to the use and depreciation of the packing house, packing machinery, and other farm machinery and equipment on the Farmland, the Mesh-House and its improvements[.]" Motion to Vacate, JVA, Doc. 1-3, p. 15 of 24.

- 23 -

1  "financing" on "less favourable" terms was in excess of the Tribunal's powers and the bounds
2  of reason.

3      Alternatively, Movants assert that if the Tribunal did not consider the facility charge
4  claim (i.e., the Tribunal would have identified ALP's claim for two years of the $3,236,625
5  "facilities charge in lieu of depreciation," but left it undecided), the Award must be vacated
6  under FAA §10(a)(4), because the arbitrators "so imperfectly executed [their powers] that
7  a mutual, final, and definite award upon the subject matter was not made."

8      PTG asserts, however, that the imposition of a new requirement is not a basis for
9  vacating an arbitration award under the FAA and that only the specific numerated grounds
10  are a basis to vacate an award.  PTG also asserts that Movants have misconstrued the Award.
11  PTG asserts that the Tribunal did not require Movants to prove mitigation, but only proof of
12  damages – Movants should have shown they were harmed by PTG's failure to contribute to
13  growing costs (e.g., the cost of alternative funds).  *Higgins v. Arizona Savings & Loan*
14  *Assoc.*, 365 P.2d 476, 482 (Ariz. 1961) (the measure of damages for a breach of a contract
15  to lend money is the difference between the contract interest rate and the increased interest
16  rate).

17      In their Reply, Movants do not address PTG's argument that the Tribunal was not
18  requiring Movants to prove mitigation, just damages.  However, Movants have argued that
19  the proof of the damages was "in the JVA provision of $3,140,000, the withholding of $3
20  million of prior profits, the offset of $3 million for defaulted growing costs, and the fact that
21  ALP somehow went ahead with the crop despite its partner's default."  Reply to Motion to
22  Vacate, Doc. 25, p. 8 of 11.  Moreover, "[a]s an alternative to the measure of damages . . .,
23  the injured party has a right to damages based on his reliance interest, including expenditures
24  made in preparation for performance or in performance." Restatement (Second) of Contracts,
25  §349 (1932).  Movants assert the Tribunal simply ignored the proof and the law in issuing
26  no contract damages.

27      Additionally, Movants assert that PTG's breach meant that the agreed contribution to

28

future repairs by payment of a facilities charge "in lieu of depreciation" was not made. Movants assert that evidence of the default and the amount of the default was before the Tribunal in the JVA, which provided that PTG had to pay $3,236,625 each year of the JVA. Movants asserts that the Tribunal's denial of any recovery due to lack of "financing" evidence is "completely irrational," and makes the ICC award subject to being set aside under FAA §10(a)(4). Indeed, Movants argue that, "[i]f the concept of 'financing depreciation' is not 'completely irrational,' then it seems such a strained effort to deny damages to ALP that it merits analysis for 'evident partiality,' another ground for vacating the Award." Reply to Motion to Vacate, Doc. # 25, p. 10 of 11.

PTG asserts that, unless the Court can determine that there is "no basis in the record for the arbitrator's decision" it cannot find that the Award is completely irrational. *Comedy Club, Inc.*, 553 F.3d at 1289.

As previously stated, the Tribunal was requiring proof of what provisions remained applicable after PTG exited the Joint Venture (e.g., the facility charge). It is not that the Tribunal required Movants to prove mitigation, but the damages themselves. Although Movants assert the proof is contained within the JVA, the Tribunal did not state that the facility charge was not applicable had the JVA proceeded as anticipated . . . only that, because the JVA had not proceeded as anticipated (i.e., no growing agreement made), the question of which terms were applicable arose. Movants fail to acknowledge that the Tribunal did not find that Movants were not entitled to damages, just that under the JVA the amount of damages were not reasonably certain. Indeed, the Tribunal discussed how evidence regarding the contributions to growing expenses and the facility charge in years 2 and 3 was not advanced. *See* Motion to Vacate, Award, Doc. 1-2, ¶¶ 144-148.

In determining there was no manifest disregard of the law (i.e., whether the essence was drawn from the JVA), the Court must consider that manifest disregard of the law is more than mere error in the law. *Lagstein*, 607 F.3d at 641, *quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, — U.S. — , 130 S.Ct. 1758, 1767 (2010) ("This is a high standard

for vacatur; '[i]t is not enough . . . to show that the panel committed an error – or even a serious error.'").  Indeed, the Ninth Circuit has stated:

> Lloyd's assertion that the majority misinterpreted certain policy provisions is insufficient to show that the amount of the awards was completely irrational.  The fact that the majority may have made a mistake in citing a benefit that Lagstein had not purchased does not establish irrationality of its ultimate conclusion that Lloyd's breached its contract.  The majority provided several independent reasons for finding a breach of contract, such as Lloyd's failure to advise Lagstein of the acceptance or denial of his claim within thirty days.  This rationale was consistent with applicable Nevada law, see Nev.Rev.Stat. § 689A.410, and not inconsistent with the terms of Lagstein's policy.

*Lagstein*, 607 F.3d at 642.  The Tribunal's determination that the terms were not reasonably certain, and its suggestion of possible ways to establish damages does not show that the Award was completely irrational.

Moreover, a corollary of the strong federal policy favoring arbitration is that "arbitration awards are particularly insulated from judicial review." *Container Prods. Inc. v. United Steelworkers*, 873 F.2d 818, 819 (5th Cir.1989).  Considering the deferential manifest disregard standard, as applied to the facts of this case, vacatur of the Award is not appropriate.

## VI.  *Evident Partiality*

Because (1) the proceedings did not reflect an obvious bias against ALP, the de la Vega family, or Mexican nationals, (2) there is no known personal relationship with PTG, and (3) there is a Mexican national serving on the Tribunal, Movants acknowledge that cases of relationships with appearance of bias seem not to apply. *See, e.g., Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir.1994).  However, Movants assert that the statutory language requires only "evident partiality . . . in the arbitrators," without limitation to personal relationships.

A court may vacate an award on grounds of "evident partiality" where the result is so inexplicably favorable to one side that no other conclusion could be drawn.  FAA §10(a)(2).  Movants compare this case to *C.A. Tinaway v. Merrill Lynch & Co.*, 658 F. Supp. 576 (S.D.N.Y. 1987), where the plaintiff had documented a loss of $35,720.  Although the

arbitrators found liability against the broker and Merrill Lynch, the arbitrators only awarded damages of $2,000. The court stated that it was "unable to infer a ground for the arbitrators' decision," and "reduction . . . by ninety-five percent can only represent 'evident partiality' on the part of the arbitrators[.]" 658 F.Supp. at 579. Movants argue that the *Tinaway* case demonstrates that an extremely favorable but unexplained, irrational result for a party, despite a holding of liability against it, can justify vacating the award as "evident partiality."

Movants argue that PTG received an extremely favorable result despite the Tribunal's decision that PTG was the sole breaching party to the JVA contract. Movants assert:

To summarize, despite its sole breach, PTG received:

a.  immunity for two years' payments of "facilities charges" of $3,236,625 (total $6,473,250), based on erroneous holding that ALP, not PTG, had burden of proof on "mitigation";

b.  immunity for two years' payments of "growing costs" of $3,140,000 (total $6,280,000), also based on erroneous "mitigation" theory, and also by being allowed to argue "uncertainty" of growing costs due to failure of condition (lack of updated agreement) caused solely by PTG's breach of contract and good faith covenant;

c.  immunity from setoff statutes that apply to "wrongful dissociation" from partnership, Ariz.Rev.Stat. §29-1052, §29-1061, due to (I) lack of award of damages for breach, and (ii) award of 10% interest for entire period in which PTG was held to have breached;

d.  full recovery of PTG's claimed profit share for 2005-06 of $3,072,022 from ALP, $1,004,797 from Kaliroy, plus $75,000 investment, $173,690 amount withheld for taxes, $502,431 withheld for taxes, and $75,000 for accounting errors (total $4,902,940);

Motion to Vacate, Doc. # 1, p. 20 of 21. Further, despite having been determined not to have breached the agreement, Movants assert that they have recovered nothing for $12,753,250 of defaulted payments.

PTG points out that Movants' summary does not include any reference to the $1,513,851 in damages awarded to Kaliroy by the Tribunal. Additionally, PTG asserts that the Award was decided by a unanimous Tribunal, including that arbitrator appointed by Movants. PTG also distinguishes *C.A. Tinaway* because in that decision the court was unable to infer a basis for the arbitrators' decision. PTG asserts that there are ample factual grounds

supporting the Award issued in this case and that "where 'a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed[.]'" *Id.* at 579, *internal citation omitted*.

As stated by Movants, the proceedings do not reflect an obvious bias against Movants and there is no known relationship between an arbitrator and PTG. Moreover, grounds for the Tribunal's decision can be inferred from the facts of the case and the evidence presented to the Tribunal. Indeed, the Court notes that the hearing before the Tribunal lasted eight (8) days, eighteen (18) witnesses were heard, eleven hundred and seventy-seven (1177) exhibits were admitted, testimony of industry experts was presented, and each party called a witness who was an expert in Arizona law. *See*, Motion to Vacate, Award, Doc. 1-2, ¶¶ 10-11. Further, the Tribunal issued a fifty (50) page Award in which the Tribunal discussed facts, arguments, and legal principles. Motion to Vacate, Award, Doc. 1-2. The Court finds there is no evident partiality warranting vacatur of the Award. *See Lagstein*, 607 F.3d at 646, *citing PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 995 (9th Cir. 1999) (claim of evidence partiality characterized as borderline frivolous where there was no alleged relationship between arbitrators and parties and no evidence of personal or financial interest of arbitrators in outcome).

*Attorneys' Fees*

PTG's Petition to Confirm Arbitration Award requests attorneys' fees pursuant to the JVA, Art. IX(C). Arizona law provides that the Court may award the successful party in a contested action arising out of a contract reasonable attorney fees. A.R.S. § 12-341.01(A).[14] The Court has the discretion to determine the circumstances appropriate for the award of fees. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). The Supreme Court of Arizona has prescribed seven factors courts should consider in

---

[14]The Court notes that the Tribunal applied Arizona law in resolving the claims.

determining whether to award fees under § 12-341.01(A) including: (1) the merits of the claim or defense the unsuccessful party presented; (2) whether the parties could have avoided or settled the litigation and whether "the successful party's efforts were completely superfluous in achieving the result"; (3) whether assessing fees against the unsuccessful party will cause an extreme hardship; (4) whether the successful party prevailed on all relief sought; (5) the novelty of the legal questions presented; (6) whether the claims or defenses had been previously adjudicated in Arizona; and (7) whether an award of fees would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney fees. *Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, 265-55, 99 P.3d 1030, 1035-1036 (App. 2004), *citing Associated Indem. Corp.*, 143 Ariz. at 570.

In this case, each party's position was supported by expert testimony of a former justice of the Arizona Supreme Court. With expert testimony provided by such witnesses, it is difficult for the Court to conclude Movants' position was without merit or that the parties could have avoided litigation. Indeed, the confusing language of the JVA and the failure of the parties to resolve ongoing issues, *see e.g.*, Motion to Vacate, Award, Doc. 1-2, ¶ 22, supports a conclusion that Movants' position was not without merit.[15] Additionally, while PTG was successful, the issues, facts presented, and adequacy of proof questions were not common. Moreover, because the claims were fact intensive, the Court does not find that an award of fees would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney fees. Considering all of these factors, the Court finds an award of attorneys' fees is not appropriate.

---

[15]The Court notes that the Tribunal had considered a finding that the parties had failed to come to a meeting of the minds which would have resulted in the JVA being unenforceable or void for uncertainty. Motion to Vacate, Award, Doc. 1-2, ¶ 22(d).

Accordingly, IT IS ORDERED:

1.     The caption shall be amended to reflect the true name of Responding Party as Pacific Tomato Growers, Ltd.

2.     Kaliroy and ALP's Motion to Vacate Arbitration Award Under Federal Arbitration Act, 9 U.S.C. § 10 in Whole or in Part [Doc. #s 1 and 2] is DENIED.

3.     PTG's Petition to Confirm Arbitration Award [Doc. # 15] is GRANTED.

4.     The December 6, 2009, Arbitration Award is CONFIRMED under the terms of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208, and the Federal Arbitration Act.

5.     PTG's request for an award of attorneys' fees is DENIED.

6.     The Clerk shall enter judgment accordingly and shall then close its file in this matter.

DATED this 4th day of August, 2010.


_____
Cindy K. Jorgenson
United States District Judge